AILEENE EVANS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 75978.    Filed July 19, 1960.

*Milton P. Rice, Esq.,* and *Allison B. Humphreys, Jr., Esq.,* for the petitioner.

*George L. Hudspeth, Esq.,* for the respondent.

OPINION.

DRENNEN, *Judge:* Respondent determined a deficiency in petitioner's income tax for the year 1956 in the amount of $40.

The only issue is whether certain payments received by petitioner from the Department of Mental Health of the State of Tennessee while enrolled in a psychiatric nursing course at the University of Tennessee are excludible from her gross income as a scholarship or fellowship grant under section 117, I.R.C. 1954.

All of the facts were stipulated and the stipulation of facts, together with the exhibits attached thereto, is adopted as our findings of fact. The facts may be summarized as follows:

Petitioner was an unmarried individual residing in Nashville, Tennessee, during 1956. She filed her individual Federal income tax return for 1956 on a cash and calendar year basis with the district director of internal revenue for the district of Tennessee.

After finishing high school, petitioner entered nurses training at Fort Sanders Hospital in Knoxville, Tennessee, after completion of which she was qualified as a registered nurse.

In 1955, after she became a registered nurse, petitioner was advised and became aware of the fact that the Department of Mental Health of the State of Tennessee was making available to certain persons in the field of mental health, stipends in aid of their professional training.

Petitioner made application for one of the stipends in September 1955. Her application was approved, whereupon she promptly enrolled in early October 1955 in the psychiatric nursing program at the University of Tennessee for the purpose of taking a 1-year course in psychiatric nursing.

As a condition to receiving the monthly stipend, petitioner was required to enter into a contract with the Department of Mental Health of Tennessee. The pertinent parts of that contract, which was executed on October 5, 1955, reads as follows:

STATE OF TENNESSEE

Department of Mental Health

This Contract by and between the Department of Mental Health of the State of Tennessee, party of the first part, and *Aileene Evans*, hereinafter known as party of the second part, and *Louise Holcombe*, hereinafter known as party of the third part, who joins in this contract as surety for the financial obligations assumed hereunder by the party of the second part, WITNESSETH:

In consideration of the presumed aptitude of the party of the second part for training in connection with the study and care of mental diseases, the party of the first part agrees to furnish to the party of the second part for a period of *12* months the sum of *$160.00* per month, in order to enable the party of the second part to complete more adequate training in the treatment and care of mental diseases and/or mental patients.

In consideration of the furnishing of the above mentioned sums to the party of the second part, such party of the second part agrees that, if found acceptable to the party of the first part, he will enter the service of the party of the first part and perform services of the nature for which he was trained for such party of the first part for a period of time equal to the period of time for which the party of the first part furnished him compensation as above mentioned, unless physically disabled therefor.

The party of the second part agrees that should he be found acceptable and fail to enter the service of the party of the first part and perform services therefor for such period of time, he will at the request of the party of the first part reimburse such party of the first part for the sums so advanced him. In case of a partial performance by the party of the second part, the amount to be refunded or returned by such party of the second part shall be apportioned upon a time employed basis. * * *

The party of the third part hereby joins in this contract as surety for the party of the second part in his performance of the contingent financial obligations incurred hereunder and agrees to make good any default of the party of the second part therein.

WITNESS the hands of the parties on this the *5th* day of *October, 1955*.

DEPARTMENT OF MENTAL HEALTH,
STATE OF TENNESSEE

      (s)  C. J. Ruilmann, M.D.,
           *Commissioner,*
          *Party of the First Part.*

      (s)  Aileene Evans,
         *Party of the Second Part.*

      (s)  Louise Holcombe,
         *Party of the Third Part.*

Pursuant to the aforesaid contract petitioner received $160 each month during October, November, and December 1955, and January and February 1956. During this period she was without substantial financial means other than the stipend. At some time in February 1956, petitioner learned that there were available through the United States Public Health Service program similar stipends paying $166 a month for which she applied. She was granted a stipend from the United States Public Health Service, after which, in March 1956, she resigned from the Tennessee mental health program. Under the

program with the United States Public Health Service, she completed on September 24, 1956, her 12-month course in psychiatric training at the University of Tennessee mentioned above.

Petitioner was not a candidate for a degree while receiving the monthly stipend from the Department of Mental Health of Tennessee. While she was enrolled in the psychiatric nursing program at the University of Tennessee undergoing training leading to a certificate in psychiatric nursing, petitioner did no work of any description for the Department of Health of Tennessee and none for the University of Tennessee other than that incidental to the normal clinical training of a nursing student, which is an established part of the curriculum. This clinical training involved for the most part consultation with patients for short periods. She received no compensation of any character for such work.

Petitioner satisfied her contractual obligation to the Department of Mental Health of Tennessee under the terms of the above contract by working half-time for 9 months for regular wages from about October 1, 1956, to July 1, 1957, at Gailor Psychiatric Hospital in Memphis, Tennessee, an institution operated jointly by the University of Tennessee and the Department of Mental Health of Tennessee, which are separate and independent agencies of the government of the State of Tennessee. During this same 9-month period, petitioner also attended the University of Tennessee School of Nursing and obtained her bachelor of science degree from the university on or about July 1, 1957. Immediately following this, she accepted regular employment at the Central State Hospital in Nashville, Tennessee, which hospital was operated by the Department of Mental Health of the State of Tennessee. She was still an employee of that hospital at the time of the hearing.

Petitioner understood, and it is and has always been the policy of the Department of Mental Health of Tennessee that stipend recipients may satisfy their contractual obligations to the department under its grants and stipends program by service in any mental hospital operated by that department, service in an administrative capacity in that department, or service in any nonprofit, outpatient community mental health center supported in part by funds furnished by the department.

The stipends awarded by the Department of Mental Health have always been given only to promising persons as grants to encourage the training of professional personnel in the mental health field in which there is and has been a severe shortage in Tennessee. They are awarded in all cases solely upon the basis of the individual need of each person during his training period and have ranged from $60 per month to $330 per month. Stipend awards are kept under close surveillance, and the needs of each person are constantly reviewed.

The amounts paid are increased or diminished according to those needs as same are determined from time to time.

Petitioner's employers at Central State Hospital where she ultimately became employed had no knowledge at the time of her employment that she had during her training period received a stipend from the Department of Mental Health. Her salary is and has been the same as that paid to any person in a similar capacity, similarly qualified, and with similar experience. It is and has been in no way affected by the fact of prior receipt of mental health stipends.

Petitioner did not report the $320 she received from the Mental Health Department of Tennessee for the months of January and February 1956 in her income tax return for the year 1956, contending that it is excludible from gross income as a scholarship or fellowship grant under section 117, I.R.C. 1954. Respondent included the $320 in petitioner's gross income for 1956, contending that the amount was not excludible under section 117 because it was conditioned on and compensation for future employment by the Department of Mental Health of Tennessee.[1]

By the new provisions contained in section 117, I.R.C. 1954, Congress intended, according to the committee reports,[2] to provide rules for determining the extent to which amounts received as scholarships and fellowship grants were to be included in gross income, and to eliminate the existing confusion as to whether such payments were to be treated as gifts or income. *Frank Thomas Bachmura*, 32 T.C. 1117.

Section 117(a)[3] excludes from gross income amounts received as a scholarship at an educational institution or as a fellowship grant, and amounts received to cover certain expenses incident thereto. Subsection (b) limits the application of subsection (a), (1) in the case of individuals who are candidates for degrees and (2) in the case of individuals who are not candidates for degrees. In the case of individuals who are candidates for degrees, subparagraph (1)

---

[1] The record does not reveal whether respondent attempted to tax the payments received by petitioner from the Mental Health Department of Tennessee during the year 1955. However, it is apparent from the record and opening statements of counsel that respondent has not included in petitioner's gross income for the year 1956 any part of the $166-per-month stipend she received from the United States Public Health Service from March to September 1956. In Rev. Rul. 57-370, 1957-2 C.B. 105, respondent ruled that awards received under the United States Public Health Service program by trainee-nurses who are not candidates for degrees are excludible from gross income under section 117(b)(2).

[2] H. Rept. No. 1337, 83d Cong., 2d Sess., pp. 17, a37; S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 17, 188.

[3] SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS.

(a) GENERAL RULE.—In the case of an individual, gross income does not include—

(1) any amount received—

(A) as a scholarship at an educational institution (as defined in section 151(e)(4)), or

makes section 117(a) inapplicable to amounts received which represent payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or grant, except under certain circumstances. In the case of an individual who is not a candidate for a degree, subparagraph (2) provides that section 117(a) shall apply only if the grantor of the scholarship or fellowship grant be a tax-exempt organization, the United States, or an instrumentality or agency thereof, or a State, territory, possession, or political subdivision thereof; it also limits the amount that can be excluded.

Section 117 does not define "scholarship" or "fellowship grants," but section 1.117–3, Income Tax Regs., defines them broadly as amounts paid or allowed to a student, in the case of a scholarship, to aid him in pursuing his studies, and to an individual, in the case of a fellowship grant, to aid him in the pursuit of study or research.

It seems clear that the stipend received by petitioner, being determined by her financial need, was an amount paid to aid her in pursuing her studies and, if that alone were enough to qualify it as a scholarship, not being in excess of the limitation provided in subsection (b)(2)(B) of the law, it would be excluded from gross income as a scholarship received by an individual who was not a candidate for a degree, unless disqualified by the provisions of subsection (b)(2)(A). However, we must examine the purpose of the statute as a whole.

The literal language of subsection (b)(2)(A) seems to condition the exclusion only on the grantor being one of the tax-exempt organizations or governmental agencies prescribed therein, and it is agreed

---

(B) as a fellowship grant,
including the value of contributed services and accommodations; and
   (2) any amount received to cover expenses for—
   &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;
which are incident to such a scholarship or to a fellowship grant, but only to the extent that the amount is so expended by the recipient.
   (b) LIMITATIONS.—
      (1) INDIVIDUALS WHO ARE CANDIDATES FOR DEGREES.—***
      (2) INDIVIDUALS WHO ARE NOT CANDIDATES FOR DEGREES.—In the case of an individual who is not a candidate for a degree at an educational institution (as defined in section 151(e)(4)), subsection (a) shall apply only if the condition in subparagraph (A) is satisfied and then only within the limitations provided in subparagraph (B).
         (A) CONDITIONS FOR EXCLUSION.—The grantor of the scholarship or fellowship grant is an organization described in section 501(c)(3) which is exempt from tax under section 501(a), the United States, or an instrumentality or agency thereof, or a State, a Territory, or a possession of the United States, or any political subdivision thereof, or the District of Columbia.
         (B) EXTENT OF EXCLUSION.—The amount of the scholarship or fellowship grant excluded under subsection (a)(1) in any taxable year shall be limited to an amount equal to $300 times the number of months for which the recipient received amounts under the scholarship or fellowship grant during such taxable year, except that no exclusion shall be allowed under subsection (a) after the recipient has been entitled to exclude under this section for a period of 36 months (whether or not consecutive) amounts received as a scholarship or fellowship grant while not a candidate for a degree at an educational institution (as defined in section 151(e)(4)).

that the Department of Mental Health of the State of Tennessee qualifies as such a grantor. However, the committee reports above mentioned indicate that the provision was not intended to exclude from income amounts received by an individual who was not a candidate for a degree which in effect represent a continuing salary during a period while the recipient is on leave from his regular job. As said by this Court in *Frank Thomas Bachmura, supra*, "[i]t is patent, we think, that Congress never intended that the exclusion provided in section 117(a) should apply to payments received by an individual not a candidate for a degree merely because they were received from an * * * institution or foundation meeting the requirements as set forth in section 117(b)(2)(A)." However, we think it is equally clear from the manner in which the statute is framed and the committee reports that Congress did not intend to limit the exclusion so as to make taxable amounts received under circumstances such as are here present.

Respondent contends that because petitioner signed an agreement to enter the service of the grantor for a limited period upon completion of her training, the amounts received were compensation for services to be rendered in the future, and were therefore not excluded from gross income under section 117(a). Respondent relies on his regulations, section 1.117-4, and various revenue rulings [4] in support of this position.

Section 1.117-4 of the regulations provides that certain payments shall not be considered to be amounts received as a scholarship or fellowship grant, included among which are amounts which represent "either compensation for past, present, or future employment services" or "payment for services which are subject to the direction or supervision of the grantor," and amounts paid to enable the recipient "to pursue studies or research primarily for the benefit of the grantor." This section also provides:

However, amounts paid or allowed to, * * * an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117 if the *primary* purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. * * * [Emphasis supplied.]

Despite language in several of respondent's rulings which might imply a contrary conclusion,[5] we do not think the payments received by petitioner here are denied status as amounts received as a scholarship under the above provisions of the regulations.

---

[4] Respondent cites Rev. Rul. 55–347, 1955–1 C.B. 21; 56–419, 1956–2 C.B. 112; 57–370, 1957–2 C.B. 105; and 58–322, 1958–1 C.B. 59.

[5] We refer to language appearing in some of the above rulings and others emphasizing the fact that the recipient of the payments either was or was not obligated to render services to the grantor in the future.

At the time petitioner received these payments, she was not and had never been an employee of the grantor. She rendered no services for the grantor during her training period, and the amounts paid to her were not related to the value of any services she might render in the future but were determined solely on her financial needs in order to undertake the training. The obligation she incurred was either to refund the amounts received or, if found acceptable to the grantor, to become an employee of the grantor or one of the prescribed mental health agencies for a limited period at some time in the future. The agreement was not a contract of present employment. The payments were made primarily to permit petitioner to complete her study or training and were not compensation for services. Petitioner was paid at the full rate of compensation for a person with her qualifications and experience when she later rendered services as an employee, and there is nothing to indicate that the stipend received had any bearing on her later salary as an employee. Any benefits the Mental Health Department or the State of Tennessee might receive in the future by virtue of petitioner's training were merely incidental. The State would naturally desire that her training be used for the benefit of its citizenry and the citizens of Tennessee were the ones who actually received the benefit thereof.

In that part of their reports discussing section 117 of the new revenue law,[6] both the House Ways and Means Committee and the Senate Finance Committee explained that the provision would exclude from gross income scholarships or fellowships but would not apply to amounts received by candidates for degrees as payment for research or teaching services, unless this was required as a part of the course to obtain the degree, and to amounts received by individuals who were not candidates for degrees which in effect represented a continuation of the recipient's salary. Both limitations appear to have reference to payments made for services being rendered at the time the scholarships or grants are being paid. In the case of the individual who is not a candidate for a degree, the limitation would seem to contemplate an employer-employee relationship prior to the time the scholarship or grant is awarded, or at least as a part of the award.

We recognized in the *Bachmura* case that under section 117 amounts received as a fellowship grant may be compensatory in character and need not be included in gross income merely because they were in the nature of compensation for services rendered. To be included in income, the arrangement between the parties must be primarily one of employment and the payments, even though for study or research, must be primarily payments of compensation rather than for the primary purpose of enabling the recipient to

6 See footnote 2.

carry on the studies or research in furtherance of his own education and training.

As mentioned in footnote 1, respondent ruled in Rev. Rul. 57–370, 1957–2 C.B. 105, that awards received by trainee-nurses under the United States Public Health Service program are excludible from gross income under section 117(b)(2), and respondent has not included in petitioner's income the amounts she received under that program after she switched from the Tennessee-sponsored program to the United States-sponsored program. She continued exactly the same training under the United States Public Health Service program and the only apparent reason for the distinction is that under the United States Public Health Service program, petitioner was not obligated to become an employee of the grantor in the future. We do not think this is a sound basis for distinction under the statute. Both stipends were paid primarily to aid and encourage petitioner in furtherance of her education in a field both programs recognized as being of importance to the welfare of the citizens of the State and country. The fact alone that under the Tennessee program petitioner was under obligation to use her training for a limited period in that State does not convert what would otherwise qualify as a scholarship into a compensatory arrangement outside the intent and scope of the statute.

In *Ethel M. Bonn*, 34 T.C. 64, we held that amounts received by a graduate physician from the Veterans' Administration while serving as a resident in psychiatry at a Veterans' Administration hospital constituted compensation for services rendered and were not excludible from income under section 117. But there we found that the resident-trainee program was merely incidental to the *"raison d'etre* of the Hospital, namely, the care of its patients" and that the resident trainees concurrently performed valuable professional services of a substantial nature essential to the operation of the hospital and that the payments were compensation for those services. That case is clearly distinguishable from this case on the facts.

We have concluded that the primary purpose of the payments made to petitioner here by the Department of Mental Health of the State of Tennessee was to enable petitioner to obtain psychiatric training in her individual capacity and that the payments were not primarily compensation for services rendered or to be rendered in the future. Consequently, the payments qualify as amounts received as a scholarship or fellowship grant under section 117 and are not to be included in petitioner's gross income. Cf. *Wrobleski* v. *Bingler*, 161 F. Supp. 901 (W.D. Pa.).

Reviewed by the Court.

*Decision will be entered for the petitioner.*