HELMUT MUELLER AND GIOIA S. MUELLER, ET AL.,[1] PETITIONERS, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 94014, 325-62, 326-62, 875-62, 3938-62.   Filed February 20, 1964.

*Gabriel T. Pap,* for the petitioners.
*Lawrence A. Wright,* for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Andrew G. Szent-Gyorgyi and Eva M. Szent-Gyorgyi, docket Nos. 325-62 and 875-62, and Albert Szent-Gyorgyi and Marta Szent-Gyorgyi, docket Nos. 326-62 and 3938-62.

642

OPINION

OPPER, *Judge:* Petitioners apparently found their claim of exclusion solely on the provisions of section 74 referring to "prizes and awards." [2] They correctly suggest that no comparable provision existed prior to 1954. The same appears to be true of section 117 referring to "fellowship grants." [3] That the two sections are somewhat related is clear. [4] But we think it cannot be presumed that they duplicate each other and as a consequence they seem to us in essence to be mutually exclusive. See *Max Isenbergh*, 31 T.C. 1046, 1052 (1959).

We need not speculate on the cause of petitioners' sole reliance on section 74, though one is not difficult to envisage. [5] But since none of the parties bases any contention on section 117, nothing we say here should be construed as deciding any issue with reference to it.

In order to reconcile section 74 with section 117, it seems most appropriate to regard the former as primarily related to past activities

[2] SEC. 74 [I.R.C. 1954]. PRIZES AND AWARDS.

(b) EXCEPTION.—Gross income does not include amounts received as prizes and awards made primarily *in recognition* of religious, charitable, scientific, educational, artistic, literary, or civic *achievement,* but only if—

(1) the recipient was selected without any action on his part to enter the contest ,or proceeding; and

(2) the recipient is not required to render substantial *future* services as a condition to receiving the prize or award. [Emphasis added.]

[3] SEC. 117 [I.R.C. 1954]. SCHOLARSHIPS AND FELLOWSHIP GRANTS.

(a) GENERAL RULE.—In the case of an individual, gross income does not include—

(1) any amount received—

*   *   *   *   *   *   *

(B) as a fellowship grant, including the value of contributed services and accommodations; * * *

[4] SEC. 74 [I.R.C. 1954]. PRIZES AND AWARDS.

(a) GENERAL RULE.—Except as provided in subsection (b) and in section 117 (relating to scholarships and fellowship grants), gross income includes amounts received as prizes and awards.

[5] SEC. 117 [I.R.C. 1954]. SCHOLARSHIPS AND FELLOWSHIP GRANTS.

(b) Limitations.—

*   *   *   *   *   *   *

(2) INDIVIDUALS WHO ARE NOT CANDIDATES FOR DEGREES.—* * *

*   *   *   *   *   *   *

(B) EXTENT OF EXCLUSION.—The amount of the scholarship or fellowship grant excluded under subsection (a)(1) in any taxable year shall be limited to an amount equal to $300 times the number of months for which the recipient received amounts under the scholarship or fellowship grant during such taxable year, except that no exclusion shall be allowed under subsection (a) after the recipient has been entitled to exclude under this section for a period of 36 months (whether or not consecutive) amounts received as a scholarship or fellowship grant while not a candidate for a degree at an educational institution (as defined in section 151(e)(4)).

of the recipient, while section 117 is obviously prospective in its objective. The language,[6] the legislative history,[7] and the accepted meaning of the words [8] lead us to this conclusion.

Although section 74 requires the application of a threefold test— (1) primarily recognition of past achievements, (2) selection without significant initiative on the part of the recipient, and (3) absence of a requirement of substantial future services—*Max Isenbergh, supra*— we think decision here turns on whether the recipients of the "awards" from the Institute were required to render substantial "future" services as a condition to receiving the payments in question.[9] This is so whether the beneficiary is "mankind," as petitioners insist, or the Institute. "[W]here the payment is in return for services rendered, it is irrelevant that the donor derives no economic benefit from it." *Robertson* v. *United States*, 343 U.S. 711 (1952).

So regarded, it seems reasonably clear that these could not have been tax-exempt "awards," as envisaged by section 74(b). They were not given "primarily" as a recognition of past achievement but entirely, or, at least, substantially, for the purpose of enabling the

---

[6] Sec. 117 does not define "scholarship" or "fellowship grants," but sec. 1.117–3, Income Tax Regs., defines them broadly as amounts paid or allowed to a student, in the case of a scholarship, to aid him in pursuing his studies, and to an individual, in the case of a fellowship grant, to aid him in the pursuit of study or research. [*Aileene Evans*, 34 T.C. 720, 724 (1960).]

[7] It [sec. 74] is a new section which *includes in gross income all prizes and awards* with certain specified exceptions. * * *

Subsection (b) excludes from income those prizes and awards which are made primarily to recognize *past* achievements of the recipient in one of the specified fields, provided the recipient was selected without any action on his part to enter the contest or to submit his works in the proceeding and provided he is not required to render any substantial *future* services as a condition to receiving the prize or award. * * * [Emphasis added.] [S. Rept. No. 1622 to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., pp. 178–179 (1954).]

This [Sec. 117] will tax those grants which are in effect merely payments of a salary during a period while the recipient is on leave from his regular job. Hence, in the case of persons who have completed their formal education and are continuing to teach or carry on research as part of their life work, the grant will be excluded only if it is merely a supplement to the individual's own funds which make it possible for him to carry on research or further his educational development. [H. Rept. No. 1337 to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., p. 17 (1954).]

[8] Looking to the ordinary meaning of the statutory terms we find no inconsistency in the interpretation adopted by the regulations. "Scholarship," by common acceptance, at least as indicated by the dictionary definition, is "an allowance to an undergraduate or a graduate, as of a university, to aid him in prosecuting his studies." Webster's New International Dictionary (2d ed. 1958.) A "fellow" is the holder of a grant or allowance, usually from a university, based on his continuing his studies for a certain time. Although study or research undertaken in an educational program may be of benefit to a grantor, the terms "scholarship" and "fellowship" connote a purpose of assistance that stands in distinction to the self-interest of an employer in the compensation of his employee. The restriction of the terms to exclude payments for work primarily for the benefit of the grantor is a natural reflection of this difference. [*Ussery* v. *United States*, 296 F. 2d 582 at 585 (C.A. 5, 1961).]

[9] Respondent argues initially as to Mueller that he applied for his position and therefore is disqualified under the second requirement listed above. Mueller stated only that he first established contact with Albert. He did not even know of the Institute or its "awards." We need not decide whether such initial contact constituted an application or the entering of a proceeding. But see Rev. Rul. 57–67, 1957–1 C.B. 33 ; cf. *Max Isenbergh*, 31 T.C. 1046 (1959).

recipient to continue the work for the future accomplishment of which he was considered worthy of assistance. While the issue, at least as to some of the petitioners, is not entirely free from doubt, the uncontradicted conditions of the payments seem to us to require this conclusion.

Albert's status presents the simplest problem. As director-in-chief of research, he carried forward the work of the Institute. He had general supervision of the activities of the other scientists as well as the duty of selecting them for the Institute. He performed administrative functions in connection with the operation of the Institute and its research center.[10]

As to all of the petitioners, the service sought and received in return for the "awards" was continued basic research in muscles. It is true that the Institute was nonprofit. It may have received nothing tangible from the work of its researchers, as petitioners argue, although the grants[11] it was given appear to have required the fulfillment of certain projects. The Institute was founded and solicited funds to do research. It established its own laboratories in which to accomplish this research and created the position of director-in-chief of research. It assembled a group of scientists at Woods Hole to accomplish its goal. There is no question that payment received for research can be compensatory. *Frank Thomas Bachmura*, 32 T.C. 1117, 1125, 1126 (1959). Under section 74, as contrasted with section 117, it is not significant whether the research here was primarily for the benefit of the "awardees" or furthered the work of the Institute. Cf. *Ti Li Loo*, 22 T.C. 220 (1954), with *George Winchester Stone, Jr.*, 23 T.C. 254 (1954).

It is admitted that petitioners would not have received payments if they had not been physically present at Woods Hole. They argue that, because of the excellent laboratory facilities and unique equipment available, it is natural that any research should be done there. It is nevertheless evident that if an "awardee" chose not to come, or to leave, or if he failed to live up to Albert's "expectation," he did not receive any further payments. Performance of research and association with the staff at Woods Hole was the essential requirement without which the "award" would not have been given. The correspondence from the Institute indicates that it looked for particular

---

[10] Q. Did you [Albert] review their work?

A. It's a very difficult question to answer. They came for advice from me, and when they published the paper they usually showed it to me because, me as a senior, I have to know what's going on from this; it is difficult to define. [Tr. 40.]

[11] Q. Now, during these taxable years, did you, on behalf of the Institute, make application for grants from foundations and associations to the Institute? * * *

A. Yes, because they usually continued year by year, but when it started—which I couldn't give the date—then we had to ask for it.

*       *       *       *       *       *       *

Q. And as part of that application, did you indicate areas of research that you were going to use this money for if you got it?

A. Yes, sir. I asked about which I am interested. [Tr. 40–41.]

specialties in its scientists which would accord with its research program. "The conclusion is inescapable, upon the evidence before us, that the petitioner[s] gave [their] skill, training, and experience in consideration for the stipend [they] received from the [Institute] which received funds for * * * research." *Ti Li Loo, supra* at 223–224.

Petitioners argue that the "awardees" were chosen because of their reputations and accomplishments. We have no doubt that professional competence was the crucial factor in selecting the individual researchers to work at Woods Hole, but these criteria are equally consistent with selection for the performance of future services.

Petitioners further argue that, because the scientists worked on projects of their own rather than being assigned specific tasks, they were not rendering services. It is the nature of basic research such as the Institute conducted that advances in knowledge are made by new ideas pursued and new projects engaged in by individuals. There is no contention that all of the research being done was not related to muscles, which is the broad field in which the Institute pursued new knowledge and received grants. Albert consulted with the scientists and knew of their work. There were substantial services required of the recipients. It seems to us to follow that one of the essential conditions of section 74 has not been met.

The other points argued by petitioners on brief are not supported by the record before us.

To take account of a concession by respondent,

> *Decision will be entered under Rule 50 in docket 94014; decision will be entered for the respondent in the remaining dockets.*