Laurence E. Broniwitz v. Commissioner.
Broniwitz v. Commissioner
Docket Nos. 6352-65, 1979-66.
United States Tax Court
T.C. Memo 1968-221; 1968 Tax Ct. Memo LEXIS 76; 27 T.C.M. (CCH) 1088; T.C.M. (RIA) 68221; September 30, 1968. Filed *76 Fellowship or scholarship grant: Degree candidate: Benefit of grantor: Primary purpose. - Held: Stipends paid to petitioner, a degree candidate, while he was a full-time student, directing his own courses of study, and not obligated to work for his grantor after receiving his degree were excludable under sec. 117, I.R.C. 1954, even though petitioner was required to work for grantor when not a full-time student and was nominally carried on grantor's rolls as an employee. Patrick E. Ryan, for the petitioner. Morley H. White, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent has determined deficiencies in the petitioner's income *77 tax as follows: Calendar Year
Amount
Docket No. 6352-65
1962
$ 646.39
1963
1,548.92
Docket No. 1979-66
1964
1,733.00 Both docket numbers involve identical factual and legal questions and were consolidated for trial, briefing and opinion. The only issue for decision is whether amounts which petitioner received from Raytheon Company while he was going to school and doing research at Massachusetts Institute of Technology were fellowship or scholarship grants, and therefore excludable from gross income under the provisions of section 117, I.R.C. 1954. [1]
Findings of Fact Some of the facts are stipulated, are so found, and are incorporated by this reference. The petitioner, Laurence E. Broniwitz, was a resident of Massachusetts at the time of filing the petition in docket No. 6352-65. When the petitioner in docket No. 1979-66 was filed he was a resident of California. He timely filed individual income tax returns for the calendar years 1962, 1963, and 1964, with the district director of internal revenue for Massachusetts. In November of 1959, *78 while studying electrical engineering at Syracuse University, the petitioner applied to the Massachusetts Institute of Technology (hereinafter referred to as MIT) for admission to their graduate school as a candidate for the degree of Master of Science in Electrical Engineering. In January of 1960 he was accepted by MIT for admission to the fall class. In June of 1960 petitioner was awarded the degree of bachelor of electrical engineering, summa cum laude. He stood first in his class in the Syracuse University Department of Engineering and was the recipient of numerous awards. Prior to his graduation, on April 20, 1960, the Raytheon Company offered petitioner a "fellowship" to MIT, which provided for the payment of tuition, a book allowance of $100, and a monthly stipend comparable to that received by a research assistant at the university. The only requirement petitioner had to meet was that he accept a position with the Equipment Division of Raytheon. The position referred to was for summer employment from June 1960 until school started in the fall of 1960. The text of the letter awarding petitioner the "fellowship" is reproduced below: April 20, 1960 Mr. Laurence E. Broniwitz
*79 511 Comstock Avenue Syracuse 10, New York
Dear Mr. Broniwitz: On behalf of the Graduate Program Committee and the Equipment Division I am pleased to inform you of your appointment for advanced study in Electrical Engineering at M.I.T. during the academic year 1960-61. It is my understanding that you have been accepted by M.I.T. As you know, this Fellowship provides for the payment of tuition, a book 1089 allowance of $100, and a monthly stipend comparable to that received by a research assistant at the University. The details regarding the method of payment will be provided at a later date. The Fellowship award assumes your acceptance of the position to be offered by the Equipment Division in the near future. Dr. H. Groginsky of the Wayland Laboratory is very much interested in having you join his staff and will be in touch with you before the end of the week. I regret that there has been some delay in communicating with you following your interview with the Committee. We are very much interested in having you join the Raytheon organization and are confident of your ability to successfully complete your Master's degree at M.I.T.I. would appreciate your informing me *80 of your decision. Very truly yours, (Signed) John B. Whitla John B. Whitla Secretary, Graduate Program Committee Petitioner accepted Raytheon's offer and, beginning with the summer of his graduation from Syracuse, throughout the years in question and up until almost the completion of his doctorial work in mid-1965, he was associated with Raytheon either as a student or an employee. When he was going to school he received a stipend; when he was working for Raytheon he was paid a salary commensurate with his abilities. In September of 1960 petitioner entered MIT as a degree candidate and began studying for his master's degree. In February of 1961 petitioner applied to MIT for admission to its graduate program leading toward a doctor of science degree, but later decided to become a candidate for the degree of electrical engineer. In June of 1961 petitioner received his master's deree. During the following summer, from June until September 1961, he worked for Raytheon. In September 1961 petitioner returned to MIT for his second year. He was a full-time student throughout the first semester. In February of 1962 he changed over to a part-time status for the second semester. *81 From February 1962 until June 1962 petitioner took two courses at MIT and worked part-time for Raytheon. In the summer of 1962 he worked full-time for Raytheon from June until September. From September of 1962 until the end of petitioner's doctorate work in the middle of 1965, he was a full-time student at MIT. He did no work for Raytheon during or subsequent to this last period of study. In September of 1963 petitioner was awarded the degree of electrical engineer. In that same month he began his work on his doctorate, which degree was ultimately awarded on February 1, 1966. During the time petitioner was associated with Raytheon, he was paid for whatever summer and part-time work he did for the company at a rate commensurate with his abilities and his qualifications and similar to that paid others having similar qualifications. Additionally, at no time while he was at school did petitioner work on projects for Raytheon, and Raytheon neither supervised nor directed his studies at MIT. The only connection petitioner maintained with Raytheon, aside from his summer employment and one semester of part-time work, was the making of progress reports on his academic activities. These *82 reports did not concern themselves with the substance of petitioner's research, but were limited only to keeping Raytheon informed as to how he was progressing towards completion of his degree requirements. It was clearly understood from the beginning of petitioner's association with Raytheon that there was no obligation on his part to continue working for the company after obtaining his degrees. In fact, after obtaining his Ph.D., petitioner rejected an offer from Raytheon and went to work for North American Aviation. Raytheon had several "educational assistance programs," but all were for employees of the company. It was therefore necessary for petitioner to be an employee in order to be a member of the graduate program. To this end the company carried him on their employment records as an "employee" throughout the entire time he was studying for his master's and doctorate, withheld taxes, medical insurance, social security, and accrued seniority for him. During the time petitioner was associated with Raytheon the company issued booklets explaining the various educational opportunities open to employees. The booklets recited general reasons for the company's sponsorship of *83 continuing education for its employees. In general terms, the company claimed that the reason it sponsored the education of people in the petitioner's position was that it desired to train young scientists for the common good, and at the same time help Raytheon's recruitment program. These booklets and 1090 pamphlets were directed to Raytheon's staff, however, there was an exception in one of them which explained that students who were interested in the graduate program could apply even though they were not employees. Petitioner saw none of these booklets or other materials prior to going to work for the company. His knowledge of Raytheon's program came from a bulletin board at Syracuse University marked "Fellowships and Scholarships," and from his correspondence and interviews. It was only after he had accepted Raytheon's offer and started working at his summer job that he began to see the corporation's own literature describing the program he was in. During the years in issue petitioner reported all amounts received from Raytheon for summer and part-time work as ordinary income. He excluded the following amounts which he received from Raytheon while he was a full-time student: *84 1962
$2,660.00
1963
7,760.50
1964
[2] 7,836.00
Opinion The sole question for decision is whether amounts paid to petitioner by Raytheon while he was a full-time student at MIT during the years 1962, 1963 and 1964, are excludable from income under the provisions of section 117 of the Internal Revenue Code. [3] There is no dispute between the parties as to the excludability of amounts received in return for services rendered Raytheon during periods when petitioner was not a full-time student. They agree that such amounts were correctly reported by petitioner as ordinary income. Our sole concern here is with those amounts paid petitioner which were denominated "stipends" by Raytheon in its letter informing him that he had won a "fellowship." *85 Petitioner was an outstanding student; he graduated first in his class from Syracuse University Department of Engineering. Before graduating, petitioner applied to and was accepted for post-graduate work at MIT, he also applied to Raytheon Company for a fellowship - which was awarded to him. Reduced to its essentials, Raytheon agreed to pay petitioner's tuition, give him a book allowance, and give him a stipend equal to the amount earned by a graduate research assistant at MIT. In return petitioner had only to work for Raytheon in the summer and at any other time when he was not a full-time student or carrying on full-time research for his doctorate. Petitioner accepted this offer, and from the time he was graduated from the university in 1960 and throughout the years in question, he maintained his relationship with Raytheon. Petitioner urges that the payments he received while he was a full-time student are excludable from gross income under section 117. Section 117 states the general rule that gross income does not include any amount received (a) as a scholarship at an educational institution or (b) as a fellowship grant. It then goes on to impose two sets of limitations *86 on the general rule of exclusion. The first applies to degree candidates, the second to nondegree candidates. Degree candidates are not allowed the exclusion on amounts earned as payment for part-time research or services required to be performed as a condition to receiving the grant. [4] Nondegree candidates are subjected to additional limitations as to the source of the grant, its size, and its duration. *87 1091 In the instant case petitioner was a degree candidate and the amounts involved herein were not paid to him for part-time research or services required as a condition to receiving his grant, therefore, the only requirement he must satisfy is the general one which states that in order to be excludable under section 117 a payment must qualify as a scholarship or fellowship. However, the Code does not define either of these terms. The regulations, section 1.117-3(a) and (c) define the words scholarship and fellowship in general terms as amounts paid to aid an individual in the pursuit of his studies or research. We do not disagree with this definition, however, it does little, if anything, to narrow the scope of our inquiry. Respondent urges that the limitations on the above definitions contained in section 1.117-4, Income Tax Regs., state the applicable legal standards which we should apply. Section 1.117-4, Income Tax Regs., is entitled "Items not considered as scholarships or fellowship grants." It is the source of what is known as the "primary purpose test," a doctrine which derives from two statements in 1.117-4. The *88 first of these statements is: "Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor." The second statement is that amounts paid to an individual to enable him to pursue his studies or research are excludable only "if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and * * * does not represent compensation or payment for * * * [past, present, or future employment services or * * * services which are subject to the direction or supervision of the grantor.]" (Emphasis supplied.) The bracketed language above is the definition of items not to be considered as scholarship or fellowship grants contained in section 1.117-4(c) (1), Income Tax Regs. Thus these regulations deny exclusionary treatment, both affirmatively and negatively, to payments which represent compensation for past, present or future employment services or which represent payments for services which are subject to the direction or supervision of the grantor or are primarily for grantor's benefit. In the instant case the *89 respondent argues that the stipends which petitioner received during the times when he was a full-time student were not excludable under section 117 because they were compensation for either past or future services, and because the primary purpose of these payments (from the company's point of view) was to benefit Raytheon. Respondent also implies, but does not strongly urge, that Raytheon exercised supervision over petitioner's studies. Even assuming that the above regulations state the correct legal standards to control the instant case, we hold, for the reasons hereinafter stated, that the facts here present clearly qualify the payments in issue as a scholarship or fellowship grant, excludable under section 117. We note, however, that these regulations have been subjected to much criticism from many different sources. Specifically, the commentators have suggested that nothing in the Code or legislative history warrants the adoption of the test that the primary purpose of a grant must be to further the education and training of the recipient in his individual capacity. See: 1 Mertens, Law of Federal Income Taxation, Sec. 7.42, p. 109, 110 (Zimet Rev. 1962). See also: Tabac, "Scholarships *90 and Fellowship Grants: An Administrative Merry-Go-Round," 46 Taxes 485 (Aug., 1968). Additionally, we have noted certain difficulties in applying them. Specifically, that determination of whether a payment was made to further the education and training of the recipient, or was in reality payment for services which directly benefited another, depends on whose purpose is adopted as a standard of measurement, and that often more than a single purpose is involved. Elmer L. Reese, Jr., 45 T.C. 407, 411 (1966), affirmed per curiam 373 F. 2d 742 (C.A. 4, 1967); Stephen L.Zolnay, 49 T.C. 389 (1968), footnote 5. The Sixth Circuit has stated that an analysis of the facts for indicia of compensation for services is a more meaningful test of the excludability of a stipend than a determination as to whether the stipend was primarily for the benefit of the grantor. They reasoned that in all instances where a past or future employment relationship is involved there are always mutual benefits. Stewart v. United States, (C.A. 6, 1966). Most recently the Third Circuit refused to follow the requirement of section 1.117-4 (c) (1), Income Tax Regs. *91 , that to be excludable a scholarship or fellowship grant 1092 must not represent "compensation for past, present, or future employment services." It reasoned that such a test is an attempt to include in the Code a concept which was rejected by Congress when it discarded the "income or gift" dichotomy of the 1939 Code. Johnson v. Bingler, 396 F. 2d 258. (C.A. 3, 1968). As we understand the thrust of the statute and its legislative history, the first inquiry in cases under section 117 is whether "the payment sought to be excluded has the normal characteristics associated with the term 'scholarship'". Elmer L. Reese, Jr., supra, at 413; Johnson v. Bingler, supra. In the instant case, the amount of the stipend was originally calculated to be equivalent to the amount received by a research assistant at MIT, and although about one year after petitioner received his masters it was increased, the amount was, in our judgment, always reasonable in relation to petitioner's needs and abilities as a student. The petitioner was given this stipend for the purpose of providing him a living allowance while he continued his studies for a doctorate, and *92 Raytheon kept track of his progress towards this end by requiring occasional reports on how he was getting on with his work. In determining that the payments in question have the normal characteristics of a scholarship or fellowship, we also consider it important that petitioner was entirely free to pursue whatever study and research he chose, and that he performed no services for Raytheon while he was receiving them. That is, while petitioner was a full-time student, he did no work or research for Raytheon. Respondent urges that subjecting the facts and circumstances of the instant case to testing by the standards promulgated in the regulations at section 1.117-4(c) (1) and (2) demonstrates that the payments in issue are not excludable. We disagree. The Third Circuit's recent decision in Johnson v. Bingler, supra, involved three employees of Westinghouse Electric Corporation who received stipendiary grants and leaves of absence in order to research, write, and defend their Ph.D. theses at either the University of Pittsburgh or Carnegie Tech. All three employees worked for the Bettis Atomic Power Laboratory and their theses all related to the work program of that Laboratory *93 in the field of nuclear engineering. As a condition to receiving the fellowships all three agreed to work for Westinghouse for two years after the termination of their educational leave. The size of the stipends were determined by reference to each employee's previous salary and the size of his family. And, lastly, the stipends were not denominated as such by the grantor in its bookkeeping system. The Court held that the stipends were excludable from income under the provisions of section 117. It reached its decision after a close examination of the statute and its legislative history, which investigation revealed that ( Johnson v. Bingler, supra at 260) - the dominant legislative intent evident in the scheme of § 117 is that of encouraging financial aid to students at accredited schools, and especially to candidates for degrees, through the device of limited tax relief. * * * In holding that the payments in question were excludable as scholarship or fellowship grants under section 117, the Court stated that ( Johnson v. Bingler, supra at 260, 261) - any reasonable stipend which comes within the common understanding of what constitutes a scholarship, *94 is paid to finance the schooling of a degree candidate, and does not fall within the limitations of § 117(b) (1) is excluded from gross income. * * * In the instant case the fact situation is much stronger than it was in Bingler, supra. Petitioner was not an employee of Raytheon in any meaningful sense prior to receiving the fellowship. True, he worked for Raytheon during the summer between his graduation from the university and the start of his work on his master's degree in the fall, but he accepted this employment for the obvious reason that it was necessary to do so in order to qualify for Raytheon's fellowship program. Neither was petitioner obligated in any way to perform any services for Raytheon upon graduation. Unlike the taxpayers in Bingler, who were required to return to work for Westinghouse, petitioner was free to do as he pleased; in fact, he went to work for North American Aviation shortly after he was awarded his doctorate. We believe that the approach of the Third Circuit in Bingler is the correct one, but even if it is not, or if we did not, we would be forced to hold against the respondent in the instant case under either of the two 1093 alternative *95 theories which he offers. The respondent's assertion that the stipend was compensation for past or future services is contradicted by the evidence for, as we have pointed out, petitioner was paid for whatever part-time or summer work he performed for Raytheon at a rate commensurate with his abilities, ans as to the respondent's assertion that petitioner was being paid for future services, that too is without merit in light of the fact that petitioner was in no way bound to work for Raytheon upon obtaining his degree and that he in fact did not do so. Respondent's alternative argument, that the stipends are not excludable because they were made primarily for the purpose of benefiting Raytheon, is also unpersuasive on its own terms. Raytheon never had more than a hope that petitioner would decide to work for it and, if this had been its overriding goal, it would have been easy enough for it to have required recipients of fellowship grants (and this petitioner) to work for the company after receiving their degrees. We find and hold that the primary purpose of the grant in issue was to help petitioner, a student with outstanding ability and promise, to continue his formal education toward *96 advanced degrees. Whatever benefits accrued to the corporation's recruitment efforts or to its goodwill were secondary to such primary purpose. In rejecting the respondent's approach we note that the instant case involves a degree candidate who was performing no services while he was a full-time student, and therefore there is no question before us as to the excludability of payments for parttime services or research. The instant case is also to be distinguished from those where nondegree candidates are being sent to school by their employers. In those cases different standards of inquiry are appropriate, for it is clear from the legislative history that Congress was concerned that a grant to a nondegree candidate not be, in effect, a continuing salary from his employer while he was going to school. S. Rept. No. 1622, 83d Cong., 2d Sess., p. 18 (1954). See also Aileene Evans, 34 T.C. 720 (1960), acq. 1965-1 C.B. 4. In the last analysis the question as to whether or not a particular award qualifies as a scholarship or fellowship is a question of fact to be determined by reference to all the circumstances of a particular case. Chander P. Bhalla, 35 T.C. 13, 17 (1960). *97 We therefore hold that the payments from Raytheon to petitioner while he was a full-time student during the years in question were properly excludable under the provisions of section 117. Decision will be entered for the petitioner. Footnotes
1. All Code references are to the I.R.C. of 1954 unless otherwise so specified.↩
2. The figure for 1962 represents the total of the amounts petitioner received from Raytheon during that part of the year when he was a full-time student. He received $350 in January, and $770 per month in October, November, and December. During 1963 and 1964 he was a full-time student all year long.↩
3. SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS. (a) General Rule. - In the case of an individual, gross income does not include - (1) any amount received - (A) as a scholarship at an educational institution (as defined in section 151(e) (4)), or (B) as a fellowship grant, * * *↩
4. The exact language is (sec. 117(b) (1)): (b) Limitations. - (1) Individuals Who Are Candidates for Degrees. - In the case of an individual who is a candidate for a degree at an educational institution (as defined in section 151(e) (4)), subsection (a) shall not apply to that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant. If teaching, research, or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, such teaching, research, or other services shall not be regarded as part-time employment within the meaning of this paragraph.↩