DAVID CASS AND JANICE V. CASS, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 26510-82.         Filed June 23, 1986.

*Jonathan D. Sokoloff* and *Daniel E. Farmer*, for the petitioners.
*Joellyn R. Cattell*, for the respondent.

JACOBS, *Judge*: Respondent determined a deficiency in petitioners' income tax for the year 1979 in the amount of $20,090. Several issues were settled prior to trial; the issues remaining for decision are (1) whether a stipend petitioner David Cass received during 1979 from the California Institute of Technology was an award subject to the provisions of section 74,[1] or a fellowship grant subject to the provisions of section 117; and if such stipend is determined to be a fellowship grant subject to section 117, then (2) the amount, if any, which may be deducted for the cost of the food purchased for David Cass' own consumption while in California.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and attached exhibits are incorporated herein by this reference.

Petitioners David Cass and Janice V. Cass were husband and wife at the time they filed their joint 1979 Federal income tax return. At the time the petition herein was filed, David Cass resided in Philadelphia, Pennsylvania, and Janice V. Cass lived in Bala Cynwyd, Pennsylvania. Since Janice is a party only by virtue of having filed a joint

---

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect during 1979. All Rule references are to the Tax Court Rules of Practice and Procedure.

return with David, David singularly hereinafter will be referred to as petitioner.

Petitioner has been a professor of economics at the University of Pennsylvania (Penn) since 1974. In July 1977, he received a letter from California Institute of Technology (Cal Tech) inviting him to accept an appointment as a Sherman Fairchild Distinguished Scholar for the academic year 1978-79. Petitioner accepted the invitation by a letter dated August 1, 1977.

The Sherman Fairchild Distinguished Scholar Program (Fairchild Scholar Program) was established in 1973 under a grant to Cal Tech from the Fairchild Foundation. The purpose of the Fairchild Scholar Program is to enable distinguished individuals to pursue their research and study at Cal Tech through associating with other scholars, students, and prominent individuals. The Fairchild Scholars are chosen on the basis of accomplishments and distinctions or on the basis of outstanding promise and ability. The Fairchild Scholars are not candidates for degree. Nor are they required to perform any services; rather they themselves determine the activities in which they will engage and the projects which they will pursue.

As a Fairchild Scholar, petitioner received from Cal Tech a stipend equivalent in amount to the salary and fringe benefits he would have received from Penn had he not left.

Aside from a conversation with a faculty member of Cal Tech during which petitioner expressed an interest in the Fairchild Scholars Program, petitioner made no effort or formal application to be considered for the stipend.

As an economist and a professor, petitioner's work generally consisted of "formulating and analyzing mathematical models of various aspects of economic behavior" and teaching classes. However, while at Cal Tech, his responsibilities were undefined and his days unstructured. Petitioner taught no classes nor did he have any administrative duties. As a Fairchild Scholar, petitioner spent a good deal of time thinking about how he could structure his future research program. In addition, petitioner worked on six papers, lectured on occasion, and established a weekly seminar in economic theory for scholars of economics in the Los Angeles area.

Petitioner moved his household, including his wife, a son aged 17, a daughter aged 11, and his dog, to Pasadena, California, from Philadelphia. He rented his house in Pennsylvania for the 1978-79 academic year and took a 1-year leave of absence from Penn without pay. While in California, petitioner incurred grocery expenses for his household in the amount of $3,307 and expenses for meals in restaurants in the amount of $910.[2]

On his Federal income tax return for 1979, petitioner omitted from income the stipend he received from Cal Tech under the Fairchild program. Respondent's notice of deficiency calculated an increase in petitioner's income of $47,006.09 for 1979 attributable to the stipend.[3]

ULTIMATE FINDING OF FACT

The money received by petitioner from Cal Tech as a Fairchild Scholar was a fellowship grant.

OPINION

The initial issue to be decided is whether the stipend received by petitioner as a Fairchild Scholar qualifies as an award fully excludable from gross income under section 74(b), or as a fellowship grant partially excludable from gross income under section 117.

Section 74(a) provides that gross income includes amounts received as prizes and awards, except as provided in section 74(b) or section 117. Section 74(b) provides that:

Gross income does not include amounts received as prizes and awards made primarily in recognition of religious, charitable, scientific, educational, artistic, literary, or civic achievement, but only if—

(1) the recipient was selected without any action on his part to enter the contest or proceeding; and

(2) the recipient is not required to render substantial future services as a condition to receiving the prize or award.

Section 117(a) provides (where pertinent) that:

---

[2] In addition, petitioner spent $173 on food for himself at Cal Tech, the deductibility of which is conceded by respondent.

[3] The parties agree that the W-2 received from Cal Tech overstated petitioner's 1979 income by $8,007.99.

In the case of an individual, gross income does not include—
    (1) any amount received—

        *      *      *      *      *      *      *

    (B) as a fellowship grant, including the value of contributed services and accommodations; and
    (2) any amount received to cover expenses for —
        (A) travel,
        (B) research,
        (C) clerical help, 'or
        (D) equipment,
which are incident to * * * a fellowship grant, but only to the extent that the amount is so expended by the recipient.

However, section 117(b)(2) provides that, in the case of an individual not a candidate for a degree, the grantor must, inter alia, be an educational organization and the amount excludable by the recipient under section 117(a) is limited to $300 times the number of months during the taxable year that the fellowship is in effect.

Petitioner argues that the stipend is an award and not a fellowship grant. If it is, however, decided that the stipend is a fellowship grant, petitioner then contends that the grant is excludable under section 74(b). Petitioner argues that all stipends, including a fellowship grant, should first be scrutinized under section 74(b) to determine its tax treatment and, only if failing thereunder, should the less beneficial provisions of section 117 be considered. Respondent argues, on the other hand, that the Fairchild Scholarship is a fellowship grant and that taxation of fellowships is within the exclusive province of section 117.

We must first determine if the Fairchild Scholarship should be characterized as a fellowship grant or as an award for tax purposes.

It is of no consequence how the parties characterize the stipend or the name they append to it but instead the reasons for its award. An award excludable under section 74(b) is one which is based primarily on the recipient's past achievements, with no connection to any future activity. The recipient may use the award in any way that he desires, including, conceivably, to achieve ends contrary to the wishes of the grantor. Examples of the types of awards covered by section 74 are the Nobel and Pulitzer Prizes.

Sec. 1.74-l(b), Income Tax Regs; H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 11 (1954). On the other hand, a fellowship grant contemplates some future activity on the part of the recipient that furthers his study or research. Sec. 1.117-3(c), Income Tax Regs.

In characterizing the stipend, it is inconsequential that petitioner was selected on the basis of his past contributions in the field of economics or that his responsibilities as a Fairchild Scholar did not include structured duties. *Mueller v. Commissioner*, 41 T.C. 639, 646 (1964), affd. 338 F.2d 1015 (lst Cir. 1964). Petitioner's past achievements no doubt were strong factors in his selection, but the reason for awarding petitioner the stipend was to enable him to advance his own research program and to interact with his colleagues. In other words, the stipend was awarded not because of what petitioner had accomplished but because of what he could accomplish by departing from his normal routine.

Having characterized the stipend as a fellowship grant, we must decide if its tax treatment is to be governed by a combination of sections 117 and 74(b), as petitioner argues, or exclusively by section 117, as respondent argues.

Petitioner finds support for his position in the cross-reference in section 74(a) to section 117, asserting that it was placed there to ensure that fellowships and scholarships would not be included in gross income by section 74(a) if, and after, they fail to qualify for exclusion under section 74(b). He contends that the respondent's interpretation of section 117 as the exclusive provision for the taxation of fellowships contradicts Congress' intent to shield fellowships from taxation.

We do not agree with petitioner's interpretation of the interaction of section 74 and section 117; he reads a redundancy into the Code that does not exist. *Mueller v. Commissioner*, 41 T.C. at 643; *Peiss v. Commissioner*, 40 T.C. 78, 83 (1963); sec. 1.117-l(a), Income Tax Regs.

The cross-reference in section 74(a) to section 117 does not establish, as petitioner argues, a "backstop" to section 74(b). Rather, it ensures that, to the extent fellowships and scholarships otherwise might be considered an award includable in gross income within the scope of section 74(a), they

would still be given the beneficial treatment accorded it by section 117. The committee reports accompanying the bill that eventually became the Internal Revenue Code of 1954 make this clear. S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 13, 178-179; H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 12, A27.

As we have discussed previously, awards and fellowship grants have distinct characteristics—the former being of a retrospective nature, the latter being prospective. The Code reflects this. Section 74 is concerned with amounts received to honor past achievements while section 117 is concerned with amounts received when certain future activities are contemplated. Therefore, the tax treatment of an amount received, once its nature is determined, is governed only by the Code section that corresponds to its characteristics. As a fellowship contemplates future activities, only section 117 dictates its tax treatment. *Mueller v. Commissioner, supra. Peiss v. Commissioner*, 40 T.C. at 83.

Petitioner cites *Isenbergh v. Commissioner*, 31 T.C. 1046 (1959), to support his proposition that a fellowship grant should first be scrutinized under section 74(b). His reliance is misplaced. The taxpayer in *Isenbergh* claimed that the award he received (a Rockefeller Public Service Award) was excludable under section 74(b). We did not pass on the question as to whether the award was in recognition of the taxpayer's past civic achievement or was for the rendering of future services because the selection of Mr. Isenbergh for the award was initiated by action which he himself took.

Petitioner's ultimate argument on this issue is that section 1.117-1(a), Income Tax Regs., is contrary to Congress' intent to create section 117 as a "backstop" to section 74(b). Section 1.117-1(a) of the regulations provides that "The exclusion from gross income of an amount which is a scholarship or fellowship grant is controlled solely by section 117."

To hold a regulation invalid we must first find it to be an unreasonable implementation of congressional mandate. *United States v. Correll*, 389 U.S. 299, 307 (1967); *Anesthesia Service Medical Group v. Commissioner*, 85 T.C. 1031 (1985). This we are not prepared to do. In view of our

holding, independent of the guidance provided by the regulation, that section 117 and section 74(b) are mutually exclusive, we hold that the regulation is reasonable. Both the regulation and our holding find support in the legislative reports that accompanied the Internal Revenue Code of 1954, in which both sections 74 and 117 first appeared. H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 11-12, 16, A27, A37 (1954);[4] S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 13, 17, 178 (1954); Joint Comm. on Internal Revenue, 83d Cong., 2d Sess., Summary of the New Provisions, 9, 12 (1954). It is clear that Congress intended retrospective awards to be covered by section 74 while section 117 covered prospective fellowship grants.

The other issue with which we must deal is the deductibility under section 162(a)(2) of petitioner's expenses for food, incurred while in California during the course of his fellowship. Section 162(a) permits a deduction for all ordinary and necessary expenses incurred in carrying on a trade or business, including amounts expended for meals and lodging while away from home in the pursuit of the trade or business. Sec. 162(a)(2). Only the portion of expenses incurred for petitioner's share of the food, and not the amounts expended for the food consumed by the other members of his household, is deductible under section 162(a) since only the portion attributable to petitioner is considered a business expense. Sec. 262; secs. 1.162-2(c) and 1.262-1(b)(5), Income Tax Regs. The burden is on petitioner to prove that he satisfies the requirements of section 162(a). *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a). The burden is also on him to substantiate the claimed expenses.

There is no question that petitioner's business is that of an economics professor. Respondent does not argue otherwise. Nor is any issue taken with the fact that petitioner was away from his tax home in Pennsylvania in pursuit of this business or that the claimed expenses are ordinary and necessary. See *Commissioner v. Flowers*, 326 U.S. 465, 470 (1946); *Michaels v. Commissioner*, 53 T.C. 269, 273 (1969).

---

[4] "Scholarships and Fellowships are not covered by the rules decribed * * * [in sec. 74]. Your committee's bill contains a specific provision [sec. 117] dealing with them" H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 12.

Respondent claims only that there was no duplication of food expenses since petitioner moved his entire family from Pennsylvania to California and set up housekeeping identical to that which he would have maintained at home. As such, argues respondent, since there exists no duplication of costs or excessive costs, there is no reason to permit a deduction for expenses incurred for food.

While there might be some practical appeal to respondent's argument, Congress has dealt with the question of duplication by simply requiring that, in order to deduct any expenses that would otherwise be personal in nature, the taxpayer must incur them while away from home in the pursuit of business. This is based on the assumption that once the taxpayer has a home from which he may be away, many of the expenses incurred while away must, to some degree, be duplicated expenses. *James v. United States*, 308 F.2d 204, 207 (9th Cir. 1962); *Michaels v. Commissioner*, *supra* at 274. Yet, Congress has expressly refused to change the statute to cover only those expenses truly duplicated or those expenses incurred that exceed what they would normally cost were they incurred at home. The Court of Appeals for the Ninth Circuit, in addressing an argument similar to respondent's, as it related to section 23(a)(1)(A) of the Internal Revenue Code of 1939 (the precursor to section 162(a)), said:

money spent for food and lodging on a business trip is normally in part business expense and in part personal living expense. When we are required to travel for business purposes, the cost of our food and shelter is increased: continuing costs incurred at a permanent place of abode are duplicated, and we are compelled, in addition, to pay higher prices for our food and shelter than we would pay if not traveling. This increased cost is clearly attributable to the exigencies of business. On the other hand, since we must eat and sleep whether or not we are traveling, that portion of the cost of food and lodging while on business travel which would have been incurred even at home is actually a personal living expense.

It would be difficult for a taxpayer to show how much the actual cost of his food and lodging exceeded what the cost would have been had he not been traveling away from home on business. In adopting what is now Section 23(a)(1)(A), Congress rejected earlier efforts of the Treasury Department to impose that onerous burden upon the taxpayer. This Section does not authorize deduction only of expenditures attributable to the business purpose, leaving those attributable to personal living

expenses subject to tax. If deductible at all, "the entire amount expended for meals and lodging" is deductible.

[*James v. United States*, 308 F.2d at 206; fn. ref. omitted.]

It is inconsequential whether petitioner purchased his food in a supermarket or a restaurant. Our concerns are (1) whether he incurred expenses while away from home in pursuit of his business, and if so (2) the amount of these expenses. Therefore, to the degree that petitioner has proven that he incurred expenses for food for his own consumption, he may claim a deduction under section 162(a)(2). *Michaels v. Commissioner, supra* at 275.

Petitioner proved by the production of receipts that the total food expenses for his family for 1979 amounted to $4,390. Of this amount, the parties agree that $173 is allowable, as it was clearly for food consumed by petitioner while on the campus of Cal Tech. Of the remaining $4,217 in food expenses, $3,307 was for food purchased at the supermarket and $910 was for food purchased in restaurants. Petitioner allocated $1,100 of the grocery store purchases (33%) and $455 of the restaurant purchases (50%) as food for his own consumption. Petitioner arrived at the allocation of grocery expenses by a formula based on the proportionate body weights of the members of his family. As petitioner put it at trial, "I tried to think of a formula that made sense, and you can think of a lot of them. Remember, I am an economist, this is partly the game I play. One [way]—the dumb one, I would say—is to take four people and divide by four, forgetting I had at that time an 11 year old daughter, that my wife is approximately two-thirds my size, and that I have a son who is a complement to me. * * * The formula that I used was the next simple formula, [to] which I could also object on a lot of grounds, but it also makes a lot of sense, and that is to * * * [allocate] the food [by] the family's weight."

Petitioner's allocation is, to say the least, creative. However, if it proposes to approach a scientific approximation of the amount of food consumed by each member of the household, it is flawed, e.g., it ignores factors such as the

relative metabolic rate of each person.[5] Any parent having a teenage child can attest to the fact that a teenager eats as much as, or more than, the parent regardless of weight.

Of course, the best proof would be to have receipts directly related to petitioner's own food consumption. Understandably, in a situation such as the one before us now, such a requirement would be onerous. Thus, we will make an estimation which we deem best reflects or approximates the true costs involved. *Cohan v. Commissioner*, 39 F.2d 540, 543-544 (2d Cir. 1930). In the absence of proof of a more precise method, we deem it best to employ the simplest approach available. Accordingly, we allocate one-fourth of the total contested food expenses ($4,217) to petitioner, discounting the grocery expenses ($3,307) by 5% to account for dog food.[6] Thus, petitioners may deduct $1,185.91 of the $4,390 food costs as a food expense under section 162(a)(2).

Accordingly,

*Decision will be entered under Rule 155.*

---

[5] Were we to place our judicial imprimatur on a scientific approach of cost allocation, it must not be on one with a flaw that renders it no more precise than the simplest means available.

[6] It was petitioner's burden to prove to us how much, if any, of the food receipts from the supermarket pertained to dog food purchases. It was also his burden to establish, as is apparently his unstated assumption, that none of the restaurant expenses were for food consumed by his children. He has failed on both of these counts.