Lawrence Spruch and Grace Marmor Spruch v. Commissioner.
Spruch v. Commissioner
Docket No. 75637.
United States Tax Court
T.C. Memo 1961-63; 1961 Tax Ct. Memo LEXIS 285; 20 T.C.M. (CCH) 324; T.C.M. (RIA) 61063; March 6, 1961
Milton Young, Esq., 595 Madison Ave., New York, N. Y., and Samuel J. Friedman, Esq., for the petitioners. Warren S. Shine, Esq., for the respondent. MURDOCK Memorandum Opinion MURDOCK, Judge: The Commissioner determined a deficiency of $477.76 in the income tax of the petitioners for 1955, and in so doing he added $2,083.40 to income with the explanation that the amount of $2,583.40 received by you from New York University in the year 1955 constituted compensation for services performed by you, fully taxable as ordinary income within *286 the purview of Section 61 of the Internal Revenue Code of 1954. Inasmuch as you reported only $500.00 of this amount, your income is accordingly increased by the amount of $2,083.40. The petitioners assign that action of the Commissioner as error, the petitioners claiming that the amount of $2,083.40 is excludable from income under section 117 of the Internal Revenue Code of 1954. The facts have been submitted by a stipulation which is adopted as the findings of fact. The petitioners, husband and wife, filed a joint return for 1955 with the district director of internal revenue for the Lower Manhattan District of New York. They used a cash receipts and disbursements method in filing their return. Grace received the degree of bachelor of arts in 1947 and the degree of master of science in the field of physics in 1949. She enrolled at New York University in September 1950 to pursue a course of study and research leading to the degree of doctor of philosophy in the field of physics. All candidates for a degree of doctor of philosophy in physics at New York University were required to complete successfully a prescribed number of advanced *287 courses in physics, pass certain written examinations, engage in scholarly investigation, and give evidence of exhaustive study of a special field of physics which either added to the knowledge of the subject or produced a new and scientific interpretation thereof, and to present a thesis suitable for publication in a recognized scientific or technical journal. Grace by December 1951 had completed successfully all of the requirements except for the research and thesis and was ready to engage in the required research. She applied to Hartmut Kallman, professor of physics at the University, for permission to conduct the research under him, and requested that she receive money for the period of such research. The funds which the University then had for full-time graduate students in physics came from grants from and contracts with private foundations and Government agencies. Grace made an unsuccessful application to a foundation for a grant. Kallman had become interested in 1949 in conducting research in the field of fluorescence and photoconductivity phenomena in the belief that it could add to the recognized knowledge in the field and provide a medium of research to graduate students *288 under his supervision, both candidates for a degree and post-doctoral students. An outline prepared by him of the proposed research was sent to the U.S. Army Signal Corps, Laboratory Procurement Office, and he conducted discussions with scientific personnel of the Corps relative to such research and the funds necessary for its conduct. His proposal was approved by the University which entered into a contract effective February 1, 1950, with the Signal Corps. This contract was periodically renewed on an annual basis, which renewals have carried it through the year 1955. Kallman has been the project director of this research project since its inception. Kallman, after a review of Grace's academic record, agreed that she could study under him, designated her as a research assistant conducting research within the scope of the project described above, tentatively allocated to her $2,500 per year from the project funds, and so notified the University by means of a contract assignment form. The budget office on receipt of the original form entered Grace's name as a research assistant on the books of account relating to the funds provided by the Signal Corps contract and Grace received payments *289 at the rate of $208.34 per month in 1955. This was the amount generally allocated to research assistants on such projects by the physics department of the University, regardless of the financial needs of the individual student. Grace chose her subject of study in conjunction with her thesis adviser, Kallman, from a number of subjects suggested to her by him, all of which came within the general area encompassed by the Signal Corps contract and the field of study in which Kallman was a recognized authority. Kallman, in accepting Grace as a research assistant, took into consideration her academic ability including her potential as a successful degree candidate. Grace submitted no financial statement but the project director and the University assumed that students generally were in need of money. Grace received during 1955 ten monthly payments of $208.34 from the University, from which it withheld income and F.I.C.A. taxes. These payments in full were charged to the account maintained for the Signal Corps contract. The University expected Grace to work at least 35 hours per week on the project but actually she worked many more, although the payments to her remained constant. She *290 worked under the direction and control of Kallman within the confines of the subject matter of the contract, as was generally true of all students conducting research leading to the doctorate degree. Kallman certified monthly that all research assistants on the project had performed satisfactory service on a full-time basis and the University furnished this information to the Signal Corps. Grace engaged in research on the project without interruption from February 1, 1952, through September 30, 1955. She completed the requirements for her degree and was awarded the degree of doctor of philosophy in physics on June 15, 1955. She was a full-time candidate for that degree at all times material hereto up to that date, and all of the work in which she was engaged during that time was utilized by her in satisfying the requirements for a degree and in furthering her education. She continued to conduct research within the scope of the project and to receive $208.34 per month after the receipt of her degree until October 1, 1955, during all of which time she was in a "post-doctoral graduate student status at the University, engaged in the conduct of research to further her education." *291 The University is constantly engaged in numerous research programs which it undertakes to extend opportunities for research to faculty members not available within the University's regular budget; to increase the opportunities for graduate students to engage in full-time study and research at the University, funds and facilities for which would not otherwise be available; to contribute to the national welfare in furtherance of the University's obligation; and to contribute to human knowledge and education, the basic purpose for a university's existence. It undertakes research projects under contracts for grants only if they come within its educational objectives and the field of interest of the faculty member involved. The University in making payments, like those here in question, aimed to benefit academically qualified students so that they would not need to divert their energies from scholarly activities in order to secure necessary funds. The Signal Corps, like other contractors, had no control over the manner in which individuals ultimately receiving monies provided by the contract conduct their research. The Commissioner's argument in effect is that the primary purpose of *292 the research for which Grace was paid was to benefit and serve the interests of New York University and the United States of America rather than to enable Grace to pursue her studies. He argues that she was in effect an employee. Section 117 provides that the gross income of an individual does not include any amount received as a scholarship at an educational institution, or as a fellowship grant, and subsection (b) thereof provides that If teaching, research, or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, such teaching, research, or other services shall not be regarded as part-time employment within the meaning of this paragraph. It seems clear that the money which Grace received while she was a candidate for a degree is not to be included in her income under the foregoing provisions. Section 117 (b)(2) provides certain limitations in the case of individuals who are not candidates for degrees. It provides that the exclusion shall apply if the grantor of the scholarship or fellowship is the United States or an instrumentality or agency thereof, but *293 the amount thereof shall be limited in any taxable year to an amount equal to $300 times the number of months for which the recipient received the amounts during the taxable year. These provisions impose no limitation on Grace and the Commissioner does not contend that they do. Our conclusion is that the Commissioner erred as contended by the petitioners. Chander P. Bhalla, 35 T.C. 13 (Oct. 7, 1960). Cf. Aileene Evans. 34 T.C. 720. Decision will be entered for the petitioners.