GEORGE WEISSFISCH AND BELGICA WEISSFISCH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Weissfisch v. Comm'r
Docket No. 341-72 United States Tax Court
T.C. Memo 1974-74; 1974 Tax Ct. Memo LEXIS 245; 33 T.C.M. (CCH) 391; T.C.M. (RIA) 74074; March 27, 1974, Filed. George Weissfisch, pro se. Johnny B. Mostiler, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent has determined a deficiency of $898.77 in petitioners' Federal income tax for the calendar year 1969. The issues for decision are: (1) Whether the petitioners are entitled to exclude $3600 from their gross income for 1969 as a scholarship or fellowship grant under section 117 [1] and (2) whether the petitioners are entitled to deduct expenses for meals purchased by petitioner George Weissfisch while staying overnight at the Washington Hospital Center during "on call" duty. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The petitioner, George Weissfisch (hereinafter referred to as petitioner) and Belgica Weissfisch, are husband and wife who maintained their residence in Hyattsville, Maryland at the time the petition was filed in this case. They filed a joint Federal income tax return for the year 1969 with the district director of internal revenue, Baltimore, Maryland. Petitioner *247 is a physician. During the entire taxable year 1969, he was a first and second year resident in general surgery (first year resident - January through June; second year resident - July through December) at the Washington Hospital Center, Washington, D.C. (sometimes referred to as the Hospital Center). The Hospital Center is composed of a hospital, research foundation and school of nursing. [2] The hospital is a modern general hospital functioning primarily for diagnosis and treatment of acute illnesses, and as a result, the patient turnover is rapid. The average duration of hospitalization is less than eight days, thus providing an opportunity for the residents and interns to diagnose and treat a large variety of illnesses. During the year at issue, petitioner was a member of the house staff at the Hospital Center. The house staff administers care to both staff patients [3] and private patients under the responsibility and direct supervision of the attending physician. All patients admitted to the hospital are available for teaching *248 purposes. However, the hospital's primary concern is not teaching but rather giving the best possible care to its patients. The Hospital Center is an approved institution for internship and residency training under the auspices of the American Medical Association and the Council on Medical Education and Hospitals. Postgraduate training at the Hospital Center includes a variety of internship programs and fully accredited residencies in several medical specialties, including the four-year general surgery residency. As a first and second year resident in general surgery during the taxable year 1969 petitioner was paid certain amounts by the Hospital Center. The amount a resident in general surgery receives increases over the four-year residency program as a resident becomes more experienced and hence more valuable to the Hospital Center. Petitioner's duties as a resident included the following: on-call emergency room duty (including diagnosis), issuing pre and post-operative orders, general surgical services, consultations when requested by other residents, duty on the hospital cardiac resuscitation team, performance *249 of physicals, duty in the outpatient clinic, completion of patient records, supervision of interns and junior residents, the administration of medication prescribed by telephone orders from the attending physician, patient admissions, reporting of accidents to inpatients and examining the patients involved in such accidents, requesting laboratory and x-ray examinations, and administration of fluid therapy. As a resident and member of the house staff at the Hospital Center, petitioner received "fringe benefits" in the form of paid vacations, professional liability insurance on a group basis, scrub-suit uniforms, laundry service for the uniforms and membership in a group hospitalization plan for house staff only. Federal income taxes were withheld from the amount paid to petitioner by the Hospital Center during 1969. Pursuant to his view that the amount paid to him by the Hospital Center represented a fellowship grant, petitioner excluded $3600 [4] (12 months x $300) from his Federal income tax return for 1969. *250 In addition, petitioner reported a deduction of $294 on his Federal income tax return for the year 1969 for the cost of meals purchased while on emergency duty overnight at the Hospital Center. This was claimed on the basis that he was often required to be on emergency duty or "on call" duty. During these times, he was required to stay overnight at the Hospital Center and to eat his meals there or nearby. In his notice of deficiency dated October 27, 1971, respondent increased petitioner's gross income by the $3600 excluded by petitioners and disallowed the claimed deduction for the cost of meals. OPINION Initially we consider whether a portion of the amount received by petitioner as a resident at the Washington Hospital Center was excludable from gross income as a fellowship grant within the meaning of section 117. Section 117 provides an exclusion from gross income of any amount received as a scholarship or a fellowship grant. There is a monetary limit to such exclusion of $300 per month imposed upon individuals who are not candidates for a degree [5] (of which petitioner is one). The statute does not define the term "fellowship grant", *251 but the regulations promulgated pursuant to the statute do define the term. Section 1.117-3(c), Income Tax Regs. describes it as follows: "A fellowship grant generally means an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research * * *". The question of whether a particular sum conforms to the above definition depends upon the purpose for which the amount was granted and the nature of the activities conducted by the recipient. An amount paid to an individual to enable him to pursue studies or research will not be considered a fellowship grant if it represents compensation for employment services. Section 1.117-4(c) (1) Income Tax Regs. The Supreme Court in Bingler v. Johnson, 394 U.S. 741 (1969), has held that amounts paid by a grantor are not deemed to be within the purview of section 117 if there is a concomitant "requirement of any substantial quid pro quo from the recipients." However, if the primary purpose of the grant is to enable the recipient to further his education and training, then the amount received from the grantor can qualify as a fellowship. *252 Section 1.117-4(c) (2), Income Tax Regs.
After closely reviewing all the facts in the matter before us, we hold that the amounts paid to petitioner represented compensation for his services to the Hospital Center. Petitioner provided both extensive and valuable services to the Hospital Center. As a resident in general surgery, petitioner was required to perform a broad spectrum of patient care ranging from admitting patients to performing surgery. In carrying out these duties petitioner acted under the direct responsibility and supervision of the attending physicians. These factors indicate that the amount received by petitioner was compensation for services rather than funds granted to pursue study and research. Frederick Fisher, 56 T.C. 1201 (1971); Irwin S. Anderson, 54 T.C. 1547 (1970); Aloysius J. Proskey, 51 T.C. 918 (1969). A further indication that petitioner's residency during 1969 involved an employer-employee relationship may be found in his financial arrangements with the Hospital Center. [6] The payments to the residents were not based on financial needs, as is generally true of fellowship grants, *253 see Edward A. Jamieson, 51 T.C. 635 (1969), but rather were dependent only on the length of service of the resident. Additionally petitioner received "fringe benefits" normally associated with an employment relationship. See Woddail v. Commissioner, 321 F.2d 721 (C.A. 10, 1963), affirming a Memorandum Opinion of this Court. As a member of the house staff at the hospital, petitioner received, among other things, paid vacations, professional liability insurance on a group basis and membership in a group hospitalization plan for *254 house staff only. We do not believe that these benefits are of a type normally associated with the term "fellowship grant." See Elmer L. Reese, Jr., 45 T.C. 407 (1966), affirmed per curiam 373 F.2d 742 (C.A. 4, 1967). Petitioner has conceded that the Washington Hospital Center existed primarily for the care and treatment of the ill. Nevertheless, petitioner stresses the educational value of the approved training program offered at the Hospital Center and therefore argues that the payments he received were primarily for the purpose of continuing his education as a resident. We disagree. As this Court said in Aloysuis J. Proskey, supra, at 925: There can be no serious doubt that work as a resident physician provides highly valuable training, particularly in preparing for specialties in the various fields of medicine. Yet virtually all work as an apprentice, whether in medicine or law, carpentry or masonry, provides valuable training. Nothing in section 117 requires that an amount paid as compensation for services rendered be treated as a nontaxable fellowship grant, merely because the recipient is learning a trade, business, or profession. *255 Whatever training petitioner received during the years of his residency - and we do not deny that it was substantial - was merely "incidental to and for the purpose of facilitating the raison d'etre of the Hospital, namely, the care of its patients." Ethel M. Bonn, 34 T.C. 64, 73 (1960) * * *. Petitioner further argues that during his residency the Hospital Center was quite capable of functioning without the services of its residents. He testified that patient care would not have suffered if all the residents "walked out." We do not find petitioner's testimony convincing. The testimony is self serving and inadequate to convince the Court of petitioner's contention. Furthermore, even if the Hospital Center could do without residents, for the same reasons as enumerated in Frederick Fisher, supra, at 1215, we do not believe that the payments made to residents are noncompensatory merely because the hospital could "operate" without them. Additionally petitioner relies on Pappas v. United States, 67-1 U.S.T.C. par. 9386, 19 A.F.T.R. 2d 1276 (E.D. Ark. 1967); Anderson v. United States, 61-1 U.S.T.C. par. 9162, 7 A.F.T.R. 2d 726 (D. Minn. 1960); *256 Leathers v. United States, 352 F. Supp. 1244 (E.D. Ark. 1971) aff'd 471 F.2d 856 (C.A. 8, 1972); Wrobleski v. Bingler, 161 F. Supp. 901 (W.D. Pa. 1958); Shuff v. United States, 331 F. Supp. 807 (W.D. Va., 1971); Clarence Peiss, 40 T.C. 78 (1963) acq. 1968-2 C.B. 2, and Aileene Evans, 34 T.C. 720 (1960) acq. 1965-1 C.B. 4. [7] We find his reliance misplaced. All of the cases cited by the petitioner are factually distinguishable from the matter at hand. [8]
*257 Therefore, for all the reasons stated above we hold that the payments made to petitioner were for services rendered to the Hospital Center and do not qualify for the exclusion of section 117. The second issue for decision is whether petitioner may deduct the cost of meals purchased while staying at the Hospital Center overnight during "on call" duty as an ordinary and necessary business expense under section 162(a). Petitioner essentially argues that since he was required to sleep at the Hospital Center on various occasions and therefore dine at the Hospital or in close proximity, he is entitled to deduct his expenditures for meals as "away from home" expenses under section 162(a) (2). We disagree. Petitioners' residence during the year in question was located in Hyattsville, Maryland. The Hospital Center is located in Washington, D.C. For Federal income tax purposes, the taxpayer's principal place of employment is his "home," not where his personal residence is located, if the two are situated in different localities. Ronald D. Kroll, 49 T.C. 557 (1968). Therefore we think it clear that petitioner was not "away from home" within the purview of section 162(a) *258 (2). Accordingly, we hold that petitioner may not deduct the cost of meals purchased while on emergency duty at the Hospital Center. Decision will be entered for the Respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954 unless otherwise indicated. ↩
2. The parties have stipulated that the Hospital Center is a nonprofit organization qualifying under section 117 and section 501(c) (3). ↩
3. Staff patients are those without a private physician. ↩
4. Section 117(b) (2) (B) provides as follows: SEC. 117.SCHOLARSHIPS AND FELLOWSHIP GRANTS. * * * (B) Extent of Exclusion. - The amount of the scholarship or fellowship grant excluded under subsection (a) (1) in any taxable year shall be limited to an amount equal to $300 times the number of months for which the recipient received amounts under the scholarship or fellowship grant during such taxable year, except that no exclusion shall be allowed under subsection (a) after the recipient has been entitled to exclude under this section for a period of 36 months (whether or not consecutive) amounts received as a scholarship or fellowship grant while not a candidate for a degree at an educational institution (as defined in section 151(e) (4)). ↩
5. See section 117(b) (2). ↩
6. Petitioner has presented the Court with a letter, signed by both the director of medical education of the hospital and the assistant administrator of the hospital indicating that $3600 of the amount paid to petitioner in 1969 represented a fellowship grant. However, the question of whether, for Federal income tax purposes, the amount paid to petitioner was taxable income or excluded under section 117 is one for this Court to determine. We are not bound by an opinion or ruling made by the director of medical education or the assistant administrator of the hospital. Cf. Paul R. Zehnder, T.C. Memo. 1973-253↩. 7. The Commissioner's acquiesence in Aileene Evans, 34 T.C. 720 (1960) has been withdrawn for payments made to similarly situated taxpayers after June 30, 1970. Rev. Rul. 70-283, 1970-1 C.B. 26↩. 8. In Pappas v. United States, 67-1 U.S.T.C. par. 9386, 19 A.F.T.R. 2d 1276 (E.D. Ark. 1967); Anderson v. United States, 61-1 U.S.T.C. par. 9162, 7 A.F.T.R. 2d 726 (D. Minn., 1960) and Leathers v. United States, 352 F. Supp. 1244 (E.D. Ark., 1971) aff'd 471 F.2d 856↩ (C.A. 8, 1972) juries found that the payments made to the respective taxpayers were made primarily for the purpose of furthering the taxpayers' education and training. We have made no such finding here.